UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Carol A. Langlais,

    Plaintiff,

v.                                                      Civil Action No. 2:11-CV-284

Michael J. Astrue,
Commissioner of Social Security,

    Defendant.

## REPORT AND RECOMMENDATION
(Docs. 3, 6)

Plaintiff Carol Langlais brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI"). Pending before the Court are Langlais's motion to reverse the Commissioner's decision (Doc. 3), and the Commissioner's motion to affirm the same (Doc. 6). For the reasons stated below, I recommend that Langlais's motion be DENIED, and the Commissioner's motion be GRANTED.

## Background

Langlais was forty-nine years old on her alleged disability onset date of June 23, 2009. She completed high school, and has worked part-time as a personal caregiver for children with special needs. She is single and has an adult child. In a Function Report, Langlais stated that, prior to having her daughter, she had been fired from every job she had ever had, including eleven different jobs. (AR 231.)

Langlais is obese, and has diabetes mellitus, hypothyroidism, and symptoms of chronic pain and fibromyalgia. She also has a history of ovarian cancer, irritable bowel syndrome, and shortness of breath. On or around June 23, 2009, Langlais filed an application for SSI, alleging that, starting on June 23, 2009, she has been unable to work due to fibromyalgia. (AR 185.) She explained that her muscles ache; she has difficulty lifting things; and she cannot stand on her legs for extended periods. (*Id.*) Langlais's application was denied initially and upon reconsideration, and she timely requested an administrative hearing. A hearing was conducted on March 16, 2011 by Administrative Law Judge ("ALJ") Dory Sutker. (AR 27-62.) Langlais appeared and testified, and was represented by an attorney. A vocational expert ("VE") also testified at the hearing.

On March 21, 2011, the ALJ issued a decision finding that Langlais was not disabled under the Social Security Act from her alleged onset date through the date of the decision. (AR 10-16.) Thereafter, the Appeals Council denied Langlais's request for review of the ALJ's decision, rendering the ALJ's decision the final decision of the Commissioner. (AR 1-3.) Having exhausted her administrative remedies, Langlais filed the Complaint in this action on November 22, 2011. (Doc. 1.)

## **ALJ Decision**

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe

impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity ("RFC"), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Sutker first determined that Langlais had not engaged in substantial gainful activity since her alleged onset date of June 23, 2009.

3

(AR 12.) At step two, the ALJ found that Langlais had the following severe impairments: diabetes mellitus, hypothyroidism, obesity, and a history of endometrial adenocarcinoma in the ovary with no recurrence since 2004. (*Id.*) Conversely, noting that there was no diagnosis of fibromyalgia by a treating or examining physician, the ALJ found that this condition was not a medically determinable impairment within the meaning of the Social Security Act. (AR 13.) At step three, the ALJ found that none of Langlais's impairments, alone or in combination, met or medically equaled a listed impairment. (*Id.*) Next, the ALJ determined that Langlais had the RFC to perform the full range of light work, as defined in 20 C.F.R. § 404.1567(b). (*Id.*) The ALJ found that Langlais had no past relevant work. (AR 15.) Based on testimony from the VE, however, and given Langlais's age, education, work experience, and RFC, the ALJ determined that Medical-Vocational Rules 202.20 and 202.13 directed a finding of not disabled. (AR 15-16.) The ALJ concluded that Langlais had not been under a disability from the alleged onset date of June 23, 2009 through the date of the decision. (AR 16.)

### Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). A court's factual review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the fact[-]finder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should consider that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

I. **Credibility Assessment**

Langlais first argues that the ALJ erred in her credibility assessment. The ALJ found that, although Langlais's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity,

persistence, and limiting effects of those symptoms "are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment." (AR 14.)

It is the province of the Commissioner, not the reviewing court, to "appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984). Thus, if the Commissioner's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints. *Id.* (citing *McLaughlin v. Sec'y of Health, Educ., and Welfare*, 612 F.2d 701, 704 (2d Cir. 1982)). "When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186, at *4 (Jul. 2, 1996). An important indicator of the credibility of a claimant's statements is their consistency with other information in the record, including the claimant's medical treatment history. *Id.* at *5, 7.

Here, the ALJ considered the entire record, and gave specific reasons in support of her credibility determination. First, the ALJ accurately noted that, although consulting physician Dr. Richard Morrison indicated that Langlais had trigger points wherever he pushed on a muscle, "he did not diagnose [fibromyalgia]." (AR 14.) Rather, the ALJ noted, Dr. Morrison "was not able to identify a condition that would inhibit [Langlais's] functioning." (*Id.* (citing AR 351).) This description of Dr. Morrison's assessment is accurate, as the Doctor's conclusion is notably vague and inconclusive, stating: "Physically [Langlais] does not look in perfect condition and has multiple complaints, *which I cannot identify exactly*, which would inhibit her functioning *according to*

6

*[Langlais]*." (AR 351 (emphases added).) Langlais argues that the ALJ erred in rejecting portions of Langlais's testimony at the administrative hearing based on the lack of a fibromyalgia diagnosis. (Doc. 3 at 4-5.) But, as noted above, regardless of whether fibromyalgia was diagnosed, the ALJ determined that the condition was not a medically determinable impairment, and therefore it was proper for the ALJ to find that Langlais's fibromyalgia symptoms did not affect her ability to work. *See* 20 C.F.R. § 404.1529(b) ("Your symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present.").

In any event, it is clear that the ALJ considered Langlais's testimony that she experienced significant pain throughout her entire body due to fibromyalgia. The ALJ explicitly acknowledged this testimony, stating as follows: "[Langlais] testified that she had more symptoms whe[n] she was working"; that she "takes medications when she has flares of symptoms"; that she "can lift 10 pounds, but not continuously"; and that she "has trouble standing and sitting due to hip and thigh pain." (AR 14.) The ALJ also considered that, despite her symptoms, Langlais was able to engage in an extensive list of daily activities, including walking her neighbor's dog, grocery shopping, taking the bus, feeding her cats, caring for many plants, working on a computer, pushing a wheelbarrow at a farmer's market, attending meetings at her co-op, cooking, vacuuming, and visiting friends and family. (*Id.*) It is well-established that an ALJ may consider a claimant's daily activities in assessing the claimant's credibility, *see, e.g., Calabrese v. Astrue*, 358 F. App'x 274, 278 (2d Cir. 2009) (citing 20 C.F.R. § 404.1529(c)(3)); and thus I find that

the ALJ's consideration of Langlais's activities was proper. The ALJ noted in particular that Langlais's description of her grocery-shopping trips revealed that "significant exertion" was required, "in that she walks to the bus, takes the bus to the store, walks home with her groceries[,] and spends 3-4 hours at this endeavor." (AR 15.) Based on my review of the record, it does appear that Langlais's weekly grocery shopping required significant exertion. (*See* AR 38-39, 41-42, 228.)

Langlais asserts that the ALJ should not have based her credibility assessment in part on Langlais's daily activities because Langlais "clearly stated on the record that she used to engage in these activities," but "no longer does, or is greatly limited in doing so, because of her pain." (Doc. 3 at 5 (citing AR 29-54) (emphasis in original).) In fact, the opposite is true: Langlais clearly stated on the record at the March 2011 administrative hearing that she was engaging in extensive daily activities *at that time*, i.e., during the alleged disability period, and previously. Specifically, Langlais testified that, among other things, she walked her neighbor's pit bull unless and until he pulled on the leash; took the recycling out every week; did occasional gardening; went to the farmer's market, pushing a wheelbarrow there for one season[1]; vacuumed; visited with friends or family; did photography work on her computer up until the time her computer stopped working about six months earlier; and went grocery shopping every week, which entailed taking the bus to the store, buying groceries, and walking home (about a thirty-minute walk)

---

[1] Although Langlais does not appear to have been using a wheelbarrow at the farmer's market at the time of the administrative hearing, medical records indicate that she was using it on a regular basis in September 2009, approximately three months into the alleged disability period. (*See* AR 323 ("[Langlais] states she pushes a wheelbarrow every week to the farmer's market").)

8

while pushing her groceries in a "dog jogger."[2] (AR 37-44.) Langlais further testified that, on a typical day, she fed her daughter's cats; cared for "tons of plants," including replanting and watering them; did the dishes; had no problems going up and down the stairs in her apartment (stating "my legs work"); and had no problems with dressing, bathing, grooming, and cooking. (AR 39, 43-44; *see also* AR 225, where Langlais reported on a Social Security form that she had thirty-two plants.) The record supports this testimony. (*See* AR 225-32, 323, 327.) For example, in a September 2009 treatment note, Dr. Halle Sobel recorded that, although Langlais complained of "a 24-hour right arm pain," she was "push[ing] a wheelbarrow every week to the farmer's market" and "[wa]s convinced that [wa]s not the cause of her pain." (AR 323.) And in a July 2009 treatment note, Dr. Dean Chapman recorded that Langlais was "walking frequently and covering quite long distances." (AR 327.)

The ALJ also properly noted that medical treatment notes recorded that Langlais was doing well, had no complaints of pain, and appeared comfortable at several medical appointments. (AR 14-15 (citing AR 258, 264, 327).) Specifically, Dr. Chapman recorded in a September 2009 treatment note that Langlais was "in absolutely no acute distress," "denies any pain whatsoever," and "has full strength and sensation in all her extremities." (AR 325.) In the same month, examining consultant Dr. Richard Morrison wrote that medication was "helping with about 100% of [Langlais's] pain" and she was "feel[ing] a lot better" since taking it. (AR 349.) A few months earlier, in a July 2009

---

[2] Langlais testified that, prior to using the "dog jogger" on her grocery trips, she used a "backpack on wheels," which allowed her to pull (as opposed to push) her groceries on her walks home from the grocery store. (AR 38.)

9

treatment note, Dr. Chapman stated that Langlais was "doing well" and "ha[d] no complaints of pain." (AR 327.) Similarly, Dr. Sadie Mills noted in a March 2009 treatment note that, although Langlais had several tender points, she was "very comfortable." (AR 258.) A November 2008 treatment note from the same provider states that Langlais "den[ied] any pain today" and was "very comfort[able]" on examination. (AR 264.)

The ALJ also based her credibility assessment on a statement made by Dr. Sobel in a September 2009 treatment note. Specifically, the ALJ stated: "[Langlais's] credibility with regard to disabling symptoms of pain is further called into question by Dr. Sobel's observation in September 2009 that she had 'clearly' come to obtain pain medications." (AR 14 (citing AR 323).) Langlais argues that the ALJ mischaracterized Dr. Sobel's statement by "superimposing" the word "clearly," "suggest[ing] that [Langlais] was hiding her intentions or [was] only in the office for pain medicine." (Doc. 3 at 5-6.) But Dr. Sobel did in fact state in the September 2009 treatment note that Langlais was "clearly" in the office for the purpose of obtaining pain medication. (AR 323 ("[Langlais] clearly states that she is here for pain medications.").) Thus, the ALJ accurately described the record. Also noteworthy, Dr. Sobel commented immediately after stating that Langlais was "clearly" seeking pain medication, that Langlais "was offered a prescription for an anti-inflammatory [drug] which she states she is allergic to despite the fact that she took 4 Advil[3] prior to presenting to the clinic today" (*id.*), indicating that Dr. Sobel was indeed questioning Langlais's credibility with respect to her

---

[3] Advil is a brand of ibuprofen, and is a nonsteroidal anti-inflammatory drug (NSAID).

medical need for pain medication, and thus demonstrating that the ALJ did not mischaracterize the record as alleged by Langlais.

Another proper rationale provided by the ALJ in support of her credibility assessment is that "no treating or examining physician has described [Langlais] as disabled or as unable to work." (AR 15.) As noted by the ALJ (*id.*), in November 2008, Dr. Mark Pasanen declined to support Langlais's disability application without first conducting "a more formal evaluation," stating as follows: "I tried to delicately take [Langlais] through the difficult time in making disability assessments that are based predominantly upon a subjective complaint, such as fatigue or pain, and I think she eventually understood the predicament we find ourselves in." (AR 266.) Moreover, state agency physician Dr. John Murray concluded in October 2009 that Langlais was capable of performing light work, which conclusion the ALJ found to be "consistent with [Langlais's] extensive activities of daily living." (AR 15; *see* AR 352-59.) The ALJ afforded "great weight" to Dr. Murray's opinion (AR 15), and Langlais does not dispute that assessment.

Finally, Langlais asserts that the ALJ erred in rejecting her testimony at the administrative hearing that she could lift only "[p]robably ten pounds[,] [b]ut not on a . . . continuing basis." (AR 44.) The ALJ was not required to accept this testimony, however, without considering it in the context of the full record. *See, e.g., Beebe v. Astrue*, No. 5:10-CV-1467 (MAD), 2012 WL 3791258, at *14 (N.D.N.Y. Aug. 31, 2012) ("The ALJ is not required to accept plaintiff's testimony regarding her daily activities when [that] testimony is unsupported and inconsistent with the clinical findings and daily

activities in the record for the relevant time period."). The only evidence cited by Langlais in support of her testimony that she could not lift more than ten pounds is the report of Occupational Therapist Mark Coleman. (*See* Doc. 3 at 6.) But that report actually reveals that, during testing, Langlais was able to lift "a maximum of 35 [pounds] from the floor." (AR 759.) As discussed in more detail below, Coleman adjusted that amount of weight, and stated that Langlais lifted only "up to 17 [pounds]," based on Langlais's "state[ment to him] that she would be only able to manage half the weight she lifted . . . on a daily basis." (AR 757.) Because Coleman's conclusion regarding the amount of weight Langlais could lift was based solely on Langlais's subjective statement to him, the ALJ was not required to accept it as true, particularly where the record – medical and non-medical – does not support it. *See Vella v. Comm'r of Soc. Sec.*, 394 F. App'x 755, 757 (2d Cir. 2010) ("[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability . . . there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment") (quotation omitted); *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("[T]he ALJ is required to take the claimant's reports of pain and limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record.") (internal citations omitted); *see also* 20 C.F.R. § 404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s)

which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence . . . would lead to a conclusion that you are disabled").

## II. Analysis of Occupational Therapist Opinion

Next, Langlais argues that the ALJ failed to properly evaluate the opinion of Occupational Therapist Mark Coleman. (Doc. 3 at 6-7.) Specifically, Langlais claims that the ALJ did not sufficiently explain her decision to afford little weight to Coleman's Functional Capacity Evaluation ("FCE"), and mistakenly stated that Coleman reported that Langlais was able to lift thirty-five pounds. (*Id.*) In the FCE, Coleman opined that Langlais retained the capacity to perform sedentary-to-light work, could lift up to fifteen pounds, needed to regularly alternate between sitting and standing, and could only occasionally reach and perform activities below knee level. (AR 757.) The ALJ afforded "little weight" to this opinion on the grounds that: (1) the FCE was internally inconsistent regarding the amount of weight Langlais could lift; and (2) there was no objective basis in the FCE to support Coleman's finding that Langlais needed to alternate between sitting and standing. (AR 15.) The record supports these findings.

First, as discussed above, it is true that the FCE inconsistently states on the one hand that Langlais "lifted a maximum of 35 [pounds]" (AR 759), while on the other hand stating that Langlais "lifted up to 17 [pounds]" (AR 757) and concluding that Langlais was able to lift only "15 [pounds]" (*id.*). Coleman explained this inconsistency, however, by stating in the FCE that he adjusted his numbers based on Langlais's statement that "she would be … able to manage [only] half the weight she lifted, carried[,] pushed[,]

13

and pulled on a daily basis." (*Id.*)  Second, it is also true that there was no objective basis in the FCE to support the opinion that Langlais needed to alternate between sitting and standing.  The only statement in the FCE on this point is Coleman's observation that "Langlais sat for 20 minutes at one time, [and] was on her feet up to a maximum of 30 minutes at one time" (*id.*).  This observation was based merely on Coleman's four-hour evaluation of Langlais (*see* AR 759), and was largely founded on Langlais's complaints of pain rather than on Coleman's own observations or professional opinion.  Thus, the ALJ was correct in stating that there was no "objective basis" in the FCE for Coleman's opinion regarding Langlais's ability to sit and stand.  *See Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995) (an opinion of disability premised to a large extent upon claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted).

Also supportive of the ALJ's decision to afford only minimal weight to Coleman's opinion is that the FCE was prepared in December 2008, approximately six months before the alleged disability period began, and Langlais does not assert that her condition remained the same or worsened between December 2008 and the alleged onset date of June 23, 2009.  *See Carmickle v. Comm'r Soc. Sec.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance."). Moreover, despite Langlais's repeated reference to Coleman as "Dr. Coleman," he is not a physician, but rather, an occupational therapist.  ALJs are not required to afford the same level of deference to the opinions of "other sources," including occupational therapists, as they are to the opinions of "acceptable medical sources," including treating

physicians. *See* 20 C.F.R. § 404.1513(a), (d); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) ("Information from . . . 'other sources' cannot establish the existence of a medically determinable impairment . . .[;] there must be evidence from an 'acceptable medical source' for this purpose."). The Second Circuit explained that, "while the ALJ is certainly free to consider the opinions of . . . 'other sources' in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (citation omitted). The ALJ properly considered Coleman's opinion, and gave adequate reasons for her decision to afford little weight thereto. *See* SSR 06-03p, 2006 WL 2329939, at *6.

## Conclusion

For these reasons, I recommend that Langlais's motion (Doc. 3) be DENIED, the Commissioner's motion (Doc. 6) be GRANTED, and the decision of the Commissioner be AFFIRMED.

Dated at Burlington, in the District of Vermont, this 12th day of September, 2012.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); L.R. 72(c). Failure to timely file such objections operates as a waiver of the right to appellate review of the district court's adoption of such Report and Recommendation. *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

15